UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 9/30/16

---

JOAO CONTROL & MONITORING
SYSTEMS, LLC,

                                    Plaintiff,

      -v-

DIGITAL PLAYGROUND, INC., *et al.*,

                                    Defendants.

---

JOAO CONTROL & MONITORING
SYSTEMS, LLC,

                                    Plaintiff,

      -v-

CITY OF YONKERS and VEHICLE
TRACKING SOLUTIONS, LLC,

                                    Defendants.

---

No. 12-cv-6781 (RJS)

No. 12-cv-7734 (RJS)

OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Joao Control & Monitoring Systems ("Plaintiff") brings these two consolidated

actions against Defendants City of Yonkers, American Traffic Solutions, Inc., and a group of

corporate entities referred to throughout this litigation as the "Manwin Defendants" (collectively,

"Defendants"), asserting that Defendants unlawfully infringed on two of Plaintiff's patents – U.S.

Patent No. 7,277,010 ("Patent '010") and U.S. Patent No. 6,587,046 ("Patent '046") (collectively,

the "Patents").  Now before the Court is Defendants' joint motion for judgment on the pleadings

pursuant to Federal Rule of Civil Procedure 12(c), on the ground that Plaintiff's Patents are invalid

under Section 101 of the Patent Act, 35 U.S.C. § 101.  For the reasons set forth below, Defendants'

motion is granted in its entirety.

## I. BACKGROUND[1]

The Court assumes the parties' familiarity with the facts and procedural history of this case,

which are set forth in the Court's August 6, 2015 Memorandum and Order (Doc. No. 119), and

accordingly limits its discussion to the facts relevant to Defendants' motion.  Non-party Raymond

A. Joao is the sole named inventor of both Patents and has assigned the Patents to Plaintiff, a

corporation he wholly owns.  (*See id.* at 2.)  The Patents at issue are virtually identical, and, broadly

speaking, each is for a computerized system designed to remotely monitor or control a vehicle or

premises while receiving data from that vehicle or premises via the Internet.  Plaintiff initiated

case number 12-cv-6781 by filing a complaint on September 7, 2012 (Doc. No. 1) and ultimately

filed a third amended complaint on March 11, 2013 (Doc. No. 23).  Plaintiff initiated case number

12-cv-7734 by filing a complaint on October 17, 2012 (12-cv-7734, Doc. No. 1) and ultimately

filed a second amended complaint on September 18, 2013 (*id.* Doc. No. 86).  On November 12,

2013, the Court consolidated these two actions for discovery and pretrial proceedings, including

claim construction.  (Doc. No. 40.)  Thereafter, the parties filed cross-motions regarding their

respective proposed constructions of certain terms used in the Patents' claims (*see* Doc. Nos. 90,

93–96), and, on August 6, 2015, the Court issued a memorandum and order resolving those cross-

motions (Doc. No. 119 (the "August 6 Claim Construction Order")).

---

[1] Docket citations refer to case number 12-cv-6781 unless otherwise noted.  The facts are drawn from the third amended complaint in that action (Doc. No. 23) and the second amended complaint in the second-filed action (No. 12-cv-7734, Doc. No. 86) (collectively, the "Complaints").  In resolving Defendants' motion, the Court has also considered Defendants' opening brief and accompanying exhibits (Doc. No. 125 ("Def. Br.")), Plaintiff's opposition brief and accompanying appendix (Doc. Nos. 129 ("Pl. Opp'n") and 129-1), Defendants' reply and accompanying appendices (Doc. Nos. 130, 130-1, and 130-2), and the supplemental submissions filed by the parties in further support of and in opposition to Defendants' motion (Doc. Nos. 132–41).

On September 18, 2015, Defendants filed the current motion for judgment on the pleadings pursuant to Rule 12(c), on the ground that, in light of the Court's constructions of Plaintiff's claims, the Patents are invalid under Section 101 of the Patent Act. (Doc. No. 124.) Specifically, Defendants argue that Plaintiff's Patents are invalid because they merely involve abstract ideas and do not otherwise involve any inventive concepts or additional features that make the abstract ideas patentable. This motion was fully briefed as of October 29, 2015. (*See* Doc. Nos. 129–30.) Thereafter, and as recently as August 10, 2016, the Court received a number of supplemental letters from the parties regarding recent decisions by the Federal Circuit, various district courts, and the Patent Trial and Appeal Board. (Doc. Nos. 132–144.)

## II. LEGAL STANDARD

In deciding a Rule 12(c) motion for judgment on the pleadings, a court "employ[s] the same standard applicable to dismissals pursuant to" Federal Rule of Civil Procedure 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). Thus, the court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [Plaintiff's] favor" and deny the Rule 12(c) motion if the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

3

III. DISCUSSION

A. Applicable Standards of Patentability

Pursuant to Section 101 of the Patent Act, a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Whether subject matter is patentable is a question of law. *Fort Properties, Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1320 (Fed. Cir. 2012). If a claim in a patent involves non-patentable subject matter, it "must be rejected even if it meets all the other legal requirements of patentability." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). The Supreme Court has held that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable" because they are simply "the basic tools of scientific and technological work." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013); *accord Bilski*, 561 U.S. at 602. The idea behind this rule is that allowing patents on these "basic tools" would frustrate innovation, rather than promote it, thereby defeating "the very point of patents, which exist to promote creation." *Ass'n for Molecular Pathology*, 133 S. Ct. at 2116.

Here, Defendants argue that Plaintiffs' Patents are invalid because they are directed to an abstract idea. (Def. Br. at 1.) To determine whether a patent is directed to an abstract idea, courts must apply a two-step test that the Supreme Court first articulated in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), and developed further in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014), and thus often referred to as the "*Mayo*" or "*Alice*" test. Under the test, a court must first determine whether the patent at issue is "directed to" an abstract idea, and if so, the court must then determine whether the patent nevertheless "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea

into a patent-eligible application." *Alice*, 134 S. Ct. at 2355, 2357 (internal quotation marks omitted).

With respect to the first step, while the Supreme Court has not precisely defined what constitutes an "abstract idea," *see Content Extraction & Transmission LLC v. Wells Fargo*, 776 F.3d 1343, 1347 (Fed. Cir. 2014), it has emphasized that courts must apply the abstract idea exception broadly enough to reject patents that "'would pre-empt use of [a particular] approach in all fields, and would effectively grant a monopoly over an abstract idea,'" *Alice*, 134 S. Ct. at 2354 (quoting *Bilski*, 561 U.S. at 611–12). Significantly, abstract ideas are not limited to "preexisting, fundamental truth[s]"; rather, a "longstanding commercial practice" may constitute an abstract idea. *Id.* at 2356.

Applying the Supreme Court's guidance, the Federal Circuit has found claims invalid under the abstract idea exception where they involve concepts that are "well-known" or functions that "humans have always performed." *Content Extraction*, 776 F.3d at 1347; *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("Methods which can be performed entirely in the human mind are unpatentable" because they are "the types of methods that embody the 'basic tools of scientific and technological work' that are free to all men and reserved exclusively to none" (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). The Federal Circuit has also rejected claims invoking the concepts of "data collection, recognition, and storage," *see Content Extraction*, 776 F.3d at 1347, and of "using categories to organize, store, and transmit information," *see Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014).

Once a court concludes that a patent claim is directed to an abstract idea, it must turn to the second step of the *Alice* test, which asks whether the patent nevertheless claims a patentable

application of the abstract idea. *See Alice*, 134 S. Ct. at 2355. Specifically, the court must "consider the elements of each claim both individually and 'as an ordered combination'" and "determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* The Supreme Court has described this inquiry "as a search for an 'inventive concept' . . . that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 2354 (quoting *Mayo*, 132 S. Ct. at 1294). Prevailing at this second step "requires more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (internal quotation marks and brackets omitted) (quoting *Mayo*, 132 S. Ct. at 1294). Moreover, a patent may not just add steps to the abstract idea that "consist of well-understood, routine, conventional activity" if such steps, "when viewed as a whole, add nothing significant beyond the sum of their parts." *Mayo*, 132 S. Ct. at 1298.

Pertinent here, "[t]he introduction of a computer into the claims does not alter th[is] analysis." *Alice*, 134 S. Ct. at 2357. As the Supreme Court has explained, because computers are ubiquitous, "wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id.* at 2358 (quoting *Mayo*, 132 S. Ct. at 1297). In other words, the "prohibition against patenting abstract ideas cannot be circumvented" by specifying "a particular technological environment" – that is, the patent claim may not simply "[s]tat[e] an abstract idea while adding the words 'apply it with a computer.'" *Id.*

### B. Collateral Estoppel

Before applying the two-step *Alice* test to the Patents at issue in this case, the Court takes judicial notice of the fact that Patent '046 was found invalid in *Joao Control & Monitoring Systems, LLC v. Telular Corp.*, — F. Supp. 3d —, 2016 WL 1161287 (N.D. Ill. Mar. 23, 2016), and the Court finds that Plaintiff is therefore collaterally estopped from asserting that the same

patent is being infringed here. "The Supreme Court has held that a defense of issue preclusion applies where a party is 'facing a charge of infringement of a patent that has once been declared invalid,' even though the party asserting the defense was not a party to the action where the patent was invalidated." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015) (quoting *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349–50 (1971)). Moreover, the Federal Circuit has "established that issue preclusion applies even though the precluding judgment," here, *Telular*, "comes into existence" after the initiation of "the case as to which preclusion is sought." *Id.*

Collateral estoppel "applies when: '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002) (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)). All four criteria are clearly met here. In *Telular*, Judge Pallmeyer dismissed Plaintiff's claim that the defendant in that case infringed Patent '046, finding that Patent '046 was invalid under Section 101 of the Patent Act. 2016 WL 1161287, at *10. Applying the *Alice* test, the court found that Patent '046 was "directed to the abstract idea of monitoring and controlling property and communicating this information through generic computer functions," and that it did "not contain any additional elements sufficient to transform this abstract idea into a patent-eligible invention." *Id.*

Notwithstanding the fact that this Court issued a decision on claim construction regarding Patent '046, Defendants' motion concerns the patentability of the subject matter of Patent '046, and thus presents the identical question decided by Judge Pallmeyer. "Use of collateral estoppel

'must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.'" *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 599–600 (1948)).  However, "'[i]f the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity, collateral estoppel applies.'" *Soverain Software*, 778 F.3d at 1319 (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)) (explaining that the use of "slightly different language to describe substantially the same invention" does not defeat the application of collateral estoppel); *see also Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013) (explaining that regional circuit precedent governs the criteria for when collateral estoppel applies, but since "[t]he question whether a particular claim in a patent case is the same as or separate from another claim has special application to patent cases,'" Federal Circuit precedent governs that question).  This Court's analysis in the August 6 Claim Construction Order does not affect its analysis here with respect to whether Patent '046 falls within the abstract idea exception.  Accordingly, Judge Pallmeyer's conclusion in *Telular* that, "even interpreting the claims in the light most favorable to Plaintiff," there was "no 'reasonable construction that would bring [the claims] within patentable subject matter,'" 2016 WL 1161287, at *6 (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014)), supports the application of collateral estoppel here to bar Plaintiff's infringement action as to Patent '046.

Moreover, the Federal Circuit authority above suggests that collateral estoppel applies not only with respect to Patent '046, but also with respect to Patent '010, which is largely duplicative of Patent '046.  While the Patents each span approximately 100 pages, both Patents in substance claim invention of a system for monitoring a vehicle or premises using two computers located

remotely from the vehicle or premises: one computer that records audio or video from the vehicle or premises, and a second computer that receives audio or video information transmitted by the first computer via the Internet. (*Compare* Doc. No. 4-5 at 2 (Patent '010) (describing a "[m]onitoring apparatus and method including a processor, associated with a web site and capable of providing audio and video, which receives audio information recorded or obtained at a vehicle or premises" and then transmitted "over the Internet and/or World Wide Web"), *with* Doc. No. 4-1 at 2 (Patent '046) (describing a "monitoring apparatus and method including a processing device for receiving video information recorded by a video recording device or a camera, wherein the video recording device or a camera is located at a vehicle or a premises and the processing device is located at a location remote from the vehicle or premises" and "[t]he video information is transmitted to the communication device on or over at least one of the Internet and the World Wide Web").) Both Patents claim to "overcome[e] the disadvantages and drawbacks . . . associated with" prior vehicle and premises security monitoring. (*See* Doc. No. 4-5 at 2 (Patent '010); Doc. No. 4-1 at 26 (Patent '046).) And as set forth above, the fact that the Patents may use "slightly different language to describe substantially the same invention" does not defeat the application of collateral estoppel. *Soverain Software*, 778 F.3d at 1319. Accordingly, because the Patents are substantially the same, the Court finds that Plaintiff is collaterally estopped from bringing infringement claims on both Patents. Even if collateral estoppel did not apply, however, the Court nevertheless agrees with Judge Pallmeyer's analysis and thus concludes, as an alternative ground for dismissal, that the Patents are invalid under Section 101 under the abstract idea exception.

## C.  Applying the Patentability Standards

Because, as set forth above, the Patents use substantially the same language, the Court's analyzes the validity of the Patents jointly below.

1. Step One

Under the *Alice* test, the Court first considers whether the Plaintiff's Patents are directed to an abstract idea. The Patents are clearly directed to the idea of remote surveillance, or the monitoring of property for the purpose of securing or controlling it by electronically transmitting data about it. A number of courts have found this idea to be abstract under the principles outlined above. *See, e.g.*, *MacroPoint, LLC v. FourKites, Inc.*, No. 15-cv-1002 (PAG), 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015) (holding that patents were "directed to the abstract idea of . . . . tracking freight, including monitoring, locating, and communicating regarding the location of the freight"); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015) (holding that patents were directed to the "abstract idea [of] monitoring locations, movements, and load status of shipping containers within a container-receiving yard, and storing, sorting, and communicating this information in various forms through generic computer functions"), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016); *Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, No. 14-cv-9680 (EEC), 2015 WL 5951753, at *4 (N.D. Ill. Oct. 13, 2015) (finding that a patent was directed to the abstract idea "of observing, analyzing, monitoring, and altering" data coming from a water treatment plant); *In re TLI Commc'ns LLC Patent Litig.*, 87 F. Supp. 3d 773, 785 (E.D. Va. 2015) (patents were "clearly directed to the abstract idea of taking, organizing, classifying, and storing photographs"), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016).

Here, the Court finds that Plaintiff's Patents are similarly directed to an abstract idea, since it is apparent from the face of the Patents that they are directed to the abstract idea of remote surveillance or monitoring for security or control purposes. First, there can no doubt that a patent for monitoring property by transmitting data about it "would pre-empt use of [a particular] approach in all fields," *Alice*, 134 S. Ct. at 2354, and "tie up the use of . . . [basic] tools" in a way that would "inhibit future innovation," *Ass'n for Molecular Pathology*, 133 S. Ct. at 2116. As the

cases above illustrate, the concepts of remote surveillance, remote control, and the recording and transmission of audio and video and other data are clearly "longstanding commercial practice[s]." *Alice*, 134 S. Ct. at 2354. Simply combining these abstract ideas does not create a non-abstract idea. The Patents' claims do not specify what sort of control the invention would exercise over a vehicle or premises; how that control would be accomplished, beyond "link[ing]" to "electrical circuits" and emitting a "command code," (Doc. No. 4-6 at 19 and Doc. No. 4-7 at 1 (Patent '010 at 38–39)); or how specifically the recorded data would be used. This is clearly insufficient. *See Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*, 635 Fed. App'x 914, 917 (Fed. Cir. 2015) (invalidating a patent for a system designed to monitor and remotely control equipment if the operator becomes impaired because "[n]one of the claims at issue [were] limited to a particular kind of impairment," "explain[ed] the nature of control to be exercised," or "specif[ied] how to program" the system).

Plaintiff nevertheless argues that its Patents are "not directed to an abstract idea" because they involve "particular concrete and tangible machines and machine parts." (Pl. Opp'n at 22.) The Supreme Court explicitly rejected this argument in *Alice*, however, explaining that "simply implementing" an abstract concept "on a physical machine, namely a computer, [i]s not a patentable application of that principle," and that it was "beside the point" that the claims describe using machines that "necessarily exist[] in the physical, rather than purely conceptual, realm"). *See Alice*, 134 S. Ct. at 2357–59. Accordingly, the Court agrees with Judge Pallmeyer's conclusion that, under step one of the *Alice* test, Patent '046 (along with the substantially similar Patent '010 at issue here) is "at its core" directed to the "abstract idea of monitoring, i.e., surveillance," which is "a 'well-known' concept that 'humans have always performed.'" *Telular*, 2016 WL 1161287, at *7 (quoting *Content Extraction*, 776 F.3d at 1347).

2. Step Two

Turning to step two, the Court considers whether the Patents contain an "inventive concept" sufficient to claim a patent-eligible application of the abstract idea of remote surveillance. *Alice*, 134 S. Ct. at 2354.  The Court finds that they do not.  Put simply, the Court can discern nothing "new and useful" in Plaintiff's claims, viewed individually or as an "ordered combination." *Id.*  To be sure, Plaintiff baldly asserts that the claimed invention is an improvement on existing technology, but such conclusory assertions have no weight in the step two analysis. *See Vehicle Intelligence*, 635 F. App'x at 920 (rejecting claims that "merely state[d] the abstract idea of testing an equipment operator for impairments using an unspecified 'expert system' running on equipment that already exists in various vehicles").  Moreover, Plaintiff's claimed "method and apparatus" merely comprises the "conventional steps" of surveillance and remote control "specified at a high level of generality," *Alice*, 134 S. Ct. at 2357 – namely, the recording, transmitting, receiving, and displaying of data performed by generic electronic devices.  For example, one claim explains that the "video recording equipment . . . may include video recording device(s) and/or camera(s), such as those utilized in conjunction with personal computers . . . and/or other communication devices." (Doc. No. 4-2 at 2 (Patent '046 at 12).)  As Judge Pallmeyer found, these broad categories of generic electronic devices "merely perform basic computing functions," *Telular*, 2016 WL 1161287, at *10, which "can be achieved by any general purpose computer without special programming," *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011).

Moreover, the fact that the Patents' claims incorporate a number of generic electronic devices in addition to a computer (*see, e.g.*, Doc. No. 4-6 at 16 (Patent '010 at 31) (listing, *inter alia*, telephones, "display telephones," televisions, and "tape recorders")) does not alter the Court's analysis, as these additional elements do nothing to "ensure that the [P]atent[s] in practice [would]

12

amount[] to significantly more than a patent upon" remote surveillance or control itself. *See Alice*, 134 S. Ct. at 2355; *see also id.* at 2358 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment"). And to the extent Plaintiffs' claims purport to incorporate devices that are not generally associated with remote surveillance or control (*see, e.g.*, Doc. No. 4-2 at 2 (Patent '046 at 12) (naming "blenders, toasters, [and] irons")), the Patents do not explain how Plaintiff's system would incorporate those devices in sufficient detail to transform the abstract idea of remote surveillance and control into a patent-eligible application. Accordingly, the Court finds that Plaintiff's Patents fail the second step of the *Alice* test, and that the Patents are therefore invalid under Section 101.

## IV. CONCLUSION

In short, the Court agrees with Judge Pallmeyer that Plaintiffs' Patents are invalidly directed at the "[t]he surveillance of property in order to provide security" – "a 'well-known' concept that 'humans have always performed'" – and that the application of this abstract idea using "generic computer devices connected to a network and the Internet" does not constitute an "'inventive concept'" that turns the abstract idea of property surveillance into a patentable application. *Telular*, 2016 WL 1161287, at *7. (N.D. Ill. Mar. 23, 2016). Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED THAT Defendants' motion for judgment on the pleadings is GRANTED.

SO ORDERED.

Dated:     September 30, 2016
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE