**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOAO CONTROL & MONITORING SYSTEMS, LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>DIGITAL PLAYGROUND, INC., et al,<br><br>                Defendants, | Civil No. 1:12-CV-6781 (RJS)<br><br>**Manwin Defendants' Motion for Attorneys' Fees** |

# TABLE OF CONTENTS

**Page**

*Factual and Procedural Background* ...................................................... 2

A.    Raymond Joao and His "Companies." ................................................ 2

B.    Joao's and Its Attorneys' Shifting Complaint Allegations. ................................. 3

C.    Joao's Continued Pursuit of Litigation Despite Clear Affirmative Defenses and Dispositive Rulings in the Manwin Defendants' Favor. ............................... 4

D.    Other Relevant Court Decisions Related to the Patents-in-Suit. ....................... 6

E.    Joao and Its Attorneys' Continued to Demand an Unreasonable Settlement. ................ 7

*Legal Standard* ............................................................................ 7

*Argument* .................................................................................. 9

A.    This Case Stands Out because Joao's and Its Attorneys' Pre-Suit Investigation was Wholly Inadequate. ............................................ 10

    1.    Joao and its attorneys asserted claims that were undisputedly barred by *res judicata.* ........................................................... 11

    2.    Joao and its attorneys asserted claims against licensed entities. ........................... 11

    3.    Joao and its attorneys asserted infringement claims against websites that do not offer "Webcam systems" or that the Manwin Defendants do not own. ......... 12

B.    This Case Stands Out because Joao and Its Attorneys Advanced Meritless Arguments Throughout This Case. ................................................. 12

    1.    This case stands out because the alleged invention – a well-known task + the Internet – was known to be unpatentable. ........................................ 13

    2.    This case stands out because Joao and its attorneys tried to mislead the Court regarding section 101. ................................................. 14

    3.    This case stands out because Joao and its attorneys failed to inform the Court that the patents-in-suit were invalidated in numerous other tribunals. ................ 15

    4.    This case stands out because Joao continued to pursue its case against the Manwin Defendants in the face of a case-dispositive claim construction. ........... 16

C.    This Case Stands Out because Joao and Its Attorneys Engaged in Unreasonable Litigation Conduct. ............................................................... 18

    1.    This case stands out because Joao and its attorneys repeatedly tried to subvert the cooperative efforts of the joint defense group. ....................................... 18

    2.    This case stands out because Joao and its attorneys needlessly drove up the cost of litigation through dilatory discovery tactics. ................................ 20

*Conclusion* ............................................................................... 21

i

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Adjustacam, LLC v. Newegg, Inc.*,
   626 Fed. Appx. 987 (Fed. Cir. 2015) (unpub'd) ................................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S. Ct. 2347 (2014) ...............................................................................................14, 15

*Biax Corp. v. Nvidia Corp.*,
   626 F. App'x 968 (Fed. Cir. 2015) ..................................................................................18

*Cartner v. Alamo Group, Inc.*,
   561 F. App'x 958 (Fed. Cir. 2014) ..................................................................................17

*Chalumeau Power Sys. LLC v. Alcatel-Lucent Holding Inc.*,
   2014 WL 4675002 (D. Del. Sept. 12, 2014) .....................................................................9

*CLS Bank Int'l v. Alice Corp.*,
   717 F.3d 1269 (Fed. Cir. 2013) ................................................................................. passim

*Gust, Inc. v. AlphaCap Ventures, LLC*,
   2016 WL 7165983 (S.D.N.Y. Dec. 8, 2016) .............................................................. passim

*Homeland Housewares, LLC v. Sorensen Research & Dev. Tr.*,
   581 F. App'x 877 (Fed. Cir. 2014) ..................................................................................17

*Icon Health & Fitness, Inc. v. Octane Fitness, LLC*,
   112 F. Supp. 3d 88 (D. Minn. 2015) ..............................................................................8, 9

*In re Mettke*,
   570 F.3d 1356 (Fed. Cir. 2009) .......................................................................................13

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*,
   2016 WL 3090633 (D. Del. May 31, 2016) ......................................................................8

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*,
   173 F. Supp. 3d 717, 726-730 (N.D. Ill. 2016) .................................................................7

*Joao Control & Monitoring Systems, LLC v. Protect Am., Inc.*
   2015 WL 4937464 (W.D. Tex. Aug. 18, 2015) .................................................................7

*Lugus IP, LLC v. Volvo Car Corp.*,
   No. 12-2906, slip op. (D.N.J. Mar. 26, 2015) .................................................................18

*Lumen View Tech., LLC v. Findethebest.com, Inc.*,
   24 F. Supp. 3d 329, 334-35 (S.D.N.Y. 2014) ...................................................................8

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Lumen View Tech., LLC v. Findethebest.com, Inc.*,
    811 F.3d 479 (Fed. Cir. 2016)...........................................................................8

*Lyda v. Fremantlemedia N. Am., Inc.*,
    2012 WL 7828200 (S.D.N.Y. Aug. 9, 2012) ....................................................17

*Micron Tech., Inc. v. Rambus Inc.*,
    645 F.3d 1311 (Fed. Cir. 2011)........................................................................20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ............................................................................. passim

*Phonometrics, Inc. v. Westin Hotel Co.*,
    350 F.3d 1242 (Fed. Cir. 2003)........................................................................17

*Rates Tech., Inc. v. Broadvox Holding Co., LLC*,
    56 F. Supp. 3d 515 (S.D.N.Y. 2014).................................................................8

*Sorkin v. Universal Bldg. Products Inc.*,
    2010 WL 519742 (E.D. Tex. Feb. 9, 2010) .....................................................17

*Soverain Software LLC v. Newegg Inc.*,
    705 F.3d 1333 (Fed. Cir. 2013)........................................................................13

*Thomas & Betts Power Sols., L.L.C. v. Power Distrib., Inc.*,
    2008 WL 373639 (E.D. Va. Feb. 8, 2008)........................................................17

*Worldwide Home Prods. v. Bed, Bath & Beyond, Inc.*,
    2015 WL 1573325 (S.D.N.Y. Apr. 9, 2015) ......................................................9

### STATUTES

28 U.S.C. § 1927........................................................................................................2, 9

35 U.S.C.
    § 101 ................................................................................................... passim
    § 102.................................................................................................... 4, 5, 15
    § 103 ................................................................................................... passim
    § 112 ................................................................................................... passim
    § 116..........................................................................................................4, 5
    § 285 ................................................................................................... passim
    § 311(b).......................................................................................................15

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

### OTHER AUTHORITIES

37 C.F.R. § 42.104(b)(2).............................................................................................15

Fed. R. Civ. P.
    5(b)(1) ...............................................................................................................20
    12.................................................................................................4, 6, 7, 16
    60(b)(6) .............................................................................................................18

Plaintiff Joao Control & Monitoring Systems, LLC ("Joao"), under the guidance of its principal, Raymond Joao, has engaged in a twelve years-long litigation campaign, knowingly asserting its invalid monitoring patent family against, and demanding unreasonable settlements from, approximately 100 defendants from across the country.  Almost no company was safe from Joao's reach as it sued defendants offering or using a vast array of unrelated products and services, including auto, cosmetic, adult entertainment, surveillance/security, finance, cloud computing, big-box retail, cable TV, and communications.  While most defendants crumbled under the weight of having to fund patent litigation, and thus agreed to pay Joao a settlement demand soon after being sued, a few companies who recognized the invalidity of Joao's patents chose to fight.  In the past two years, the Patent Trial and Appeal Board ("PTAB") and four district courts vindicated their efforts—collectively ruling that ***all*** of the monitoring patents asserted by Joao are invalid.  Indeed, since 2014, various tribunals have found Joao's monitoring patents invalid in ***sixteen*** separate proceedings under multiple patentability grounds.[1]  These determinations only confirm what Joao and its attorneys must have been aware of from the outset of this case—that its patents are invalid and could not have been infringed by the Manwin Defendants.[2]  In sum, Joao's and its attorneys' persistent use of this patent family to extract settlements is the definition of unreasonable.

This case stands out from both "run-of-the-mill" patent suits and even other "patent troll" suits.  For example, apparently fueled by quick and lucrative settlements, Joao and its attorneys failed to conduct adequate pre-suit due diligence and asserted patents that it should have known

---

[1] Two patents were at issue here:  U.S. Patent No. 6587,046, which has been found invalid by three district courts and the PTAB under 35 U.S.C. §§ 101, 103 and 112, and  U.S. Patent No. 7,277,010, which has been found invalid by two district courts under 35 U.S.C. §§ 101 and 112.

[2] The "Manwin Defendants" include defendants Manwin D.P. Corp., Mindgeek S.ar.l. (f/k/a "Manwin Holding S.ar.l."), Manwin Billing MU Ltd., Manwin Billing US Corp. (f/k/a "Ahava Incorporated"), Manwin Billing Ireland, Ltd., Johnsburg Ltd., Licensing IP International S.ar.l. (f/k/a "Manwin Licensing S.ar.l."), 9219-1568 Quebec Inc. (formerly d/b/a "Manwin Canada" and n/k/a "Mindgeek"), and Manwin Billing CY Ltd.

were invalid or not infringed under current legal standards, and against websites that did not even offer the services Joao alleged infringe its patents.  Joao and its attorneys persisted in unfounded infringement claims even after the Supreme Court's ruling in *Alice*, and even after case-dispositive claim construction rulings in other cases, and in this one.  Joao and its attorneys also intentionally misled and failed to inform the Court on the law and of other courts' dispositive decisions and obstructed discovery, all designed to make defending expensive and burdensome.

The end result of this conduct was (a likely intentional) greatly increased burden and expense on any defendant that was unwilling to accede to Joao's unreasonable settlement demands.  This is exactly the type of conduct that warrants an award of attorneys' fees, costs, and sanctions, both under 35 U.S.C. § 285 and the recent Supreme Court ruling in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), and under 28 U.S.C. § 1927 and the Court's inherent powers.

### Factual and Procedural Background

### A.     Raymond Joao and His "Companies."

Joao is an entity owned solely by Raymond A. Joao.  Mr. Joao also owns at least fifteen other entities, which among them, own more than 100 patents and pending applications (contained in various patent families) and has asserted those patents in more than 75 lawsuits in at least ten different district courts across the nation.  (Declaration of Rachel Bach dated April 7, 2017 ("Bach Decl."), ¶ 3, Exs. 1 & 2.)  As to its patents-in-suit, Joao has described the specific patent family as "pertain[ing] to, among other things, systems and methods for controlling and/or monitoring vehicles and/or premises and/or their respective systems, components, and/or devices." [3]  *Joao Control & Monitoring Sys., LLC v. Olivo et al.*, No. 2:13-cv-04419-SDW-MCA (D.N.J.), Doc. 1, ¶ 16.   Virtually all of Mr. Joao's patents and patent applications contain hundreds of "specification" columns, while providing little detail as to the nature and scope of

---

[3] Defendants use the term "family" of patents to refer to patents that are in the same application chain, such as patents derived from continuation and continuation-in-part applications.

the alleged inventions.  Put simply, Mr. Joao has crafted his patents to make defending lawsuits difficult.  Further, Joao's standard (and nonnegotiable) settlement demand intentionally never actually releases any defendant from Joao's grip.[4]

## B.    Joao's and Its Attorneys' Shifting Complaint Allegations.

Joao filed its Complaint on September 7, 2012, against one defendant, Digital Playground, Inc. ("DP"), asserting that DP infringed U.S. Patent Nos. 6,587,046 and 7,277,010, which together contain 374 patent claims.[5]  (Doc. 1.)  Both patents claim apparatuses and methods for transmitting video data from one location (such as a home) through a second location (such as a "cloud" server) to a third location (such as an end-user seated at his office) in response to a signal from that third location.  The patents teach nothing about how to accomplish this non-remarkable task.  Joao's initial complaint only identified one website, www.jessejane.com, as allegedly infringing through its use of a "Webcam system."  *Id.*, ¶ 10.

On November 30, 2012, Joao filed its First Amended Complaint, adding "Manwin Corp." as a defendant, but continuing to base its claims *only* on Defendants' purported "Webcam systems" on www.jessejane.com.  (Doc. 4.)  On January 8, 2013, Joao filed its Second Amended Complaint substituting Manwin D.P. Corp. for the incorrectly named "Manwin Corp."  (Doc. 6.)

The Manwin Defendants, along with then co-defendant DP, Inc., filed on February 7, 2013, a letter requesting a pre-motion conference on their anticipated motion to dismiss the Second Amended Complaint.  (Bach. Aff., Ex. 3.)  The Court then scheduled a pre-motion conference for March 1, 2013.  (Doc. 10.)  Just one day before that conference, on February 28,

---

[4] Joao's "standard" settlement (including Joao's refusal to covenant not to sue or offer complete licenses) is discussed in Section E, *infra*.

[5] Joao had previously sued Digital Playground in a separate action pending in the Central District of California, but choose not to pursue that action after receiving unfavorable rulings in other cases then pending in that forum.  *See Joao Control & Monitoring Sys., LLC v. Digital Playground, Inc.*, No. 2-12-cv-00417, Doc. 1 (Complaint), subsequently consolidated into *Joao Control & Monitoring Sys., LLC v. Webcamnow.com Inc., et al.*, No. 2:11-cv-08257, Doc. 42 (Notice of Dismissal).

2013, Joao filed a letter requesting leave to amend its Second Amended Complaint to add unidentified additional parties and unidentified additional accused instrumentalities, which request was granted. (Bach Decl., Ex. 4.)

On March 11, 2013, Joao filed its Third Amended Complaint ("TAC"), adding **nine** new defendants. (Doc. 23.) Joao also completely dropped its allegation that its patents were infringed by the "Webcam system" on www.jessejane.com, apparently having realized that there is no webcam on that site. Instead, Joao for the first time identified **49** new purportedly infringing websites, none of which had been raised in its first three complaints filed over the preceding six months. *Id*. Joao, however, continued to assert infringement claims **only** with respect to Defendants' purported "Webcam systems" on those 49 websites. *Id*.

## C.      Joao's Continued Pursuit of Litigation Despite Clear Affirmative Defenses and Dispositive Rulings in the Manwin Defendants' Favor.

On April 5, 2013, Manwin D.P. Corp. moved to dismiss Joao's claims for indirect and willful infringement pursuant to Rule 12(b)(6) because Joao failed to allege any facts pointing to or allowing one to infer specific intent to infringe. (Doc. 25) On November 8, 2013, the Court granted the motion to dismiss with prejudice. (Doc. 39.) The Court specifically recognized that "[b]ecause the TAC is Plaintiff's fourth attempt to properly plead these claims – not counting previous versions of this litigation in other districts – all dismissals are with prejudice." *Id.* at 6.

On November 12, 2013, the Court consolidated Joao's case against the Manwin Defendants and DP with Joao's case against ATS, VTS, and the City of Yonkers. (Doc. 40.) On December 10, 2013, the Manwin Defendants filed their Answer, Affirmative Defenses, and Counterclaims. (Doc. 46.) In their Answer, the Manwin Defendants put Joao on notice that the patents-in-suit were invalid under 35 U.S.C. § 101, 102, 103, 112, and 116 with specific detail. *Id*. at Second Affirmative Defense. For example, the Manwin Defendants identified over 32 invalidating prior art references and explained that one of the defendants, Manwin Billing US Corp. ("Manwin Billing"), was formerly known as Ahava Incorporated ("Ahava") – **the same Ahava that Joao already unsuccessfully sued in California.** *Id*. at 1. Additionally, the Manwin

Defendants notified Joao that at least some of its claims were covered by a license already provided by Joao in an earlier lawsuit.  *Id*. at Ninth Affirmative Defense.

On February 21, 2014, Joao served its infringement contentions, asserting that only **ten** of the 49 separate websites listed in its TAC infringed Joao's patents.[6]  Joao asserted the Manwin Defendants infringed 16 patent claims (7 from the '046 patent, and 9 from the '010 patent). (Bach Decl., Ex. 5.)  On April 25, 2014, the Manwin Defendants served their invalidity contentions.  (Bach Decl., Ex. 6.)  In those contentions, the Manwin Defendants again notified Joao that the patents-in-suit were invalid under section 101 because "the claims asserted against the Manwin Defendants as construed by JCMS would be coextensive with an entire abstract idea . . . [that] threaten to subsume the full scope of or cover every practical application of the concept of streaming live or stored video or audio over the Internet."  *Id*. at 12 (citing *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269 (Fed. Cir. 2013)).  The Manwin Defendants also provided detailed invalidity charts for 20 pieces of prior art and explained how numerous claim terms are indefinite.  *Id*. at 2-21.

On August 6, 2015, the Court entered its Memorandum and Order on Claim Construction, including a case-dispositive construction for the Manwin Defendants on the term "monitoring."  (Doc. 119 at 14-15.)  The Court observed, twice, that its construction of monitoring should end this case.  (Doc. 117, 105:9-17 ("I do think that 'monitoring' is one that is . . . frankly likely to go against the plaintiffs. . . . . at least with respect to where [the Manwin Defendants] are concerned, because that really is, it seems to me, to be pretty dispositive."); Doc. 127, 4:23-25 ("The Manwin defendant also have, I guess, what I think is based on my claim construction, a pretty strong Rule 56 motion.").)  Nevertheless, Joao and its attorneys continued to press this case, even arguing for extensive discovery, all the while continuing to demand its "standard" settlement.

---

[6] Despite limiting its claims to ten websites, Joao continued to insist that the Manwin Defendants produce discovery regarding all 49 websites identified in the TAC.  (Bach Aff., Ex. 14.)

On September 18, 2015, the Manwin Defendants moved for judgment on the pleadings based on 35 U.S.C. § 101, asserting that the patents-in-suit were invalid because they were directed to an abstract idea.  (Doc. 124-125.)  On September 30, 2016, the Court entered an Order granting the Manwin Defendants' motion for judgment on the pleadings, finding the patents-in-suit lacked an "inventive concept" and were invalid under *Alice* and 35 U.S.C. §101. (Doc. 148 at 13.)  On October 14, 2016, Joao moved for Reconsideration of the Court's Order. (Doc. 151-154.)  On October 29, 2016, Joao filed its notice of appeal of this Court's Order to the Federal Circuit.  (Doc. 157.)  On October 31, 2016, this Court denied Joao's request for reconsideration.  (Doc. 158.)  On January 17, 2017, Joao moved to dismiss its own appeal to the Federal Circuit with prejudice.  *Joao Control & Monitoring Sys., LLC v. Manwin D.P. Corp. et al.*, Nos. 17-1133, -1134, Doc. 45.  On January 26, 2017, the Federal Circuit dismissed the appeal with prejudice.  *Id*. at Doc. 46.

**D.**     **Other Relevant Court Decisions Related to the Patents-in-Suit.**

Before Joao filed this suit, on November 18, 2011, Joao sued Ahava in the Central District of California.  *Joao Control and Monitoring Sys. LLC v. Ahava Inc.*, No. 2-11-cv-09638, Doc. 1.  Joao had the same lead counsel in both the California case and this one – Stephen Ritcheson.  On March 12, 2012, the Ahava case was consolidated into another Central District of California case, along with Joao's first suit against DP (*see* footnote 5, *supra*.), captioned as *Joao Control and Monitoring Sys. LLC v. Webcamnow.com Inc.*, No. 2-11-cv-08257.  On April 16, 2012, Ahava moved to dismiss Joao's complaint under Rule 12.  *Id*. at Doc. 33.  On April 24, 2012, the court dismissed Joao's claims against Ahava, with prejudice.  *Id*. at Doc. 34.  On April 30, 2012, Joao (again represented by Mr. Ritcheson) moved to reconsider (*id.* at Doc. 37), and the court denied Joao's motion on May 9, 2012.  *Id*. at Doc. 40.

While the present case was pending, two other courts and the PTAB ruled that Joao's patents-in-suit are invalid.  On August 18, 2015, Judge Lee Yeakel in the Western District of Texas found the patents-in-suit, as well as four other Joao patents in the monitoring family, contained indefinite claim terms under 35 U.S.C. § 112.  *Joao Control & Monitoring Sys., LLC*

*v. Protect Am., Inc.* No. 1-14-cv-134, 2015 WL 4937464, at *9-10 (W.D. Tex. Aug. 18, 2015).

On March 23, 2016, Judge Rebecca Pallmeyer in the Northern District of Illinois found the

asserted claims of the '046 patent, in addition to the asserted claims in another Joao patent in the

monitoring family, invalid for failure to claim patentable subject matter under 35 U.S.C. § 101.

*Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 726-730 (N.D. Ill.

2016).  On December 22, 2016, a panel of three Administrative Law Judges at the PTAB found

certain claims of the '046 patent invalid for obviousness under 35 U.S.C § 103.  *Terremark*

*North Am. LLC et al. v. Joao Control & Monitoring Sys., LLC*, IPR2015-01477, Paper 29

(P.T.A.B. Dec. 22, 2016).

**E.**     **Joao and Its Attorneys' Continued to Demand an Unreasonable Settlement.**

Regardless of merit, Joao and its attorneys continued to require Joao's "standard"

settlement terms – expressly retaining the right to sue the Manwin Defendants again (and again).

Joao's refusal to covenant not to sue settling defendants or license all related patents is a

hallmark of its litigation strategy.  In fact, Joao sued one its former lawyers for allegedly entering

into a more comprehensive settlement.  *Olivo*, Doc. 1, ¶¶ 68-76.

### *Legal Standard*

"The court in exceptional cases may award reasonable attorney fees to the prevailing

party."  35 U.S.C. § 285.  In 2014, the Supreme Court unanimously rejected the Federal Circuit's

narrow, formalistic standards for determining when a case is "exceptional," explaining that an

exceptional case is "simply one that stands out from others with respect to the substantive

strength of a party's litigating position (considering both the governing law and the facts of the

case) or the unreasonable manner in which the case was litigated."  *See Octane Fitness, LLC v.*

*ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Adjustacam, LLC v.*

*Newegg, Inc.*, 626 Fed. Appx. 987, 990 (Fed. Cir. 2015) (unpub'd) (recognizing that the Supreme

Court in *Octane* did not "simply relax the standard under § 285.  It substantially changed the

analysis" by rejecting the *Brooks Furniture* test as "overly rigid").[7]  Under the *Octane* standard, district courts should "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."  *Octane*, 134 S. Ct. at 1756.  A "nonexclusive list of factors" to consider includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 1756 n.6.  Finally, entitlement to fees under section 285 need only be proven by a preponderance of the evidence.  *Id.* at 1758.

Here, the merits (or lack thereof) of this case and the way it has been litigated by Joao and its attorneys stand out from other cases and justify awarding fees pursuant to section 285. *See*, *e.g.*, *Gust, Inc. v. AlphaCap Ventures, LLC*, Nos. 15CV6192, 16CV1784, 2016 WL 7165983, at *5 (S.D.N.Y. Dec. 8, 2016) (finding patent lawsuit "exceptional" where, *inter alia*, "the manner in which AlphaCap litigated its claim was unreasonable, insofar as AlphaCap's goal was to extract a nuisance settlement from Gust"); *Lumen View Tech.*, 24 F. Supp. 3d 329, 336 (imposing exceptional case fees where plaintiff's "motivation . . . was to extract a nuisance settlement . . . on the theory that [defendant] would rather pay an unjustified license fee than bear the costs of the threatened expensive litigation"); *Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. 14-cv-448-GMS, 2016 WL 3090633 (D. Del. May 31, 2016) (awarding fees where plaintiff continued to assert abstract patent after *Alice* and subsequent decisions made it inescapable that such patent claims were invalid under section 101); *Icon Health & Fitness, Inc.*

---

[7] *See also Lumen View Tech., LLC v. Findethebest.com, Inc.*, 24 F. Supp. 3d 329, 334-35 (S.D.N.Y. 2014), aff'd in part, rev'd on other grounds in part, and remanded by *Lumen View Tech., LLC v. Findethebest.com, Inc.*, 811 F.3d 479 (Fed. Cir. 2016) (observing that *Octane Fitness* relaxed the § 285 standard in two ways: one, by replacing the rigid *Brooks Furniture* test with a totality of the circumstances approach, and two, by instituting a preponderance of the evidence standard, which was lower than the previous clear and convincing evidence standard under *Brooks Furniture*); *Rates Tech., Inc. v. Broadvox Holding Co., LLC*, 56 F. Supp. 3d 515, 525-26 (S.D.N.Y. 2014) (describing the *Octane* standard as flexible and quoting *Octane* for proposition that § 285 "'imposes no specific evidentiary burden, much less such a high one'" as requiring that the conduct be independently sanctionable to warrant fees).

*v. Octane Fitness, LLC*, 112 F. Supp. 3d 888, 896-899 (D. Minn. 2015) (identifying litigation tactics that needlessly increased litigation costs as a basis for exceptional case attorney fee award pursuant to section 285); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. 11-1175-RGA, 2014 WL 4675002, at \*3 (D. Del. Sept. 12, 2014) (finding case "exceptional" where the plaintiff "filed a frivolous lawsuit with the sole purpose of extorting a settlement fee").

Moreover, 28 U.S.C. § 1927 provides that when "any attorney . . . so multiplies the proceedings in any case unreasonably and vexatiously" the attorney "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  *See, e.g., Gust, Inc.*, 2016 WL 7165983, at \*11 (awarding fees pursuant to section 1927 where "experienced patent counsel" were "well aware of *Alice* and its implications for the" patents at issue, but nonetheless chose to file lawsuits "in the expectation that they could obtain quick settlements"); *Worldwide Home Prods. v. Bed, Bath & Beyond, Inc.*, No. 11CV3633, 2015 WL 1573325, at \*6 (S.D.N.Y. Apr. 9, 2015) (imposing sanctions against attorney pursuant to section 1927 where, *inter alia*, attorney "prosecuted th[e] litigation very aggressively and ignored numerous opportunities to withdraw Plaintiff's claims").  This Court may also invoke its inherent powers to grant fees and non-statutory costs "when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Octane Fitness*, 134 S. Ct. at 1758 (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-259 (1975)).

Joao and its experienced patent counsel had no legal basis to assert the patents-in-suit in the first instance, and once they did so, they repeatedly advanced meritless arguments and drove up costs with a single goal: to force the Manwin Defendants to pay Joao and accept unreasonable settlement terms.  This case is "exceptional" and an award of fees is warranted.

### *Argument*

Joao's conduct in this case stands out from a typical patent case for at least three reasons. First, Joao and its attorneys asserted claims that it knew or should have known were legally insupportable.  Second, Joao and its attorneys advanced meritless arguments to prolong this case.

Third, Joao and its attorneys used bad faith litigation tactics to increase the cost of defending this case, trying to force one-sided settlements.  Taking into account "the totality of the circumstances," awarding the Manwin Defendants their attorneys' fees in this case is appropriate to compensate them and deter Joao from pursuing frivolous litigation and engaging in similar bad faith litigation behavior in the future.[8]  *Octane*, 134 S. Ct. at 1756 n.6.

A.    **This Case Stands Out because Joao's and Its Attorneys' Pre-Suit Investigation was Wholly Inadequate.**

Joao's pre-filing investigation was at best incomplete, and at worst non-existent.  For example, first, Joao sued an entity in this action that was the successor-in-interest to a company that Joao had ***already unsuccessfully sued*** in California.  Second, Joao accused websites of infringement that were covered by a license issued by Joao in a prior case.  Third, despite consistently referring to the accused instrumentalities as "Webcam systems," Joao repeatedly accused websites of infringement that simply (and obviously) do not have "webcams" and therefore, could not infringe Joao's patents under any circumstances.

---

[8] Not only do Mr. Joao and his multitude of other "entities" own hundreds of other patents, Mr. Joao continues to apply for new over-broad patents to be used in future shakedown cases.  *See*, *e.g.*, U.S. Patent Appl. No. 2017/0069047 ("Apparatus and method for providing and/or for processing information pertaining to and/or relating to principal/agent relationships and/or activities involving agents and third parties"); U.S. Patent Appl. No. 2017/0026683 ("Apparatus and method for providing a user customized and/or personal television and/or entertainment account").  Joao even claims to have invented a method for monetizing patents.  *See* U.S. Patent Appl. No. 2015/0193895 ("Apparatus and method for providing, and/or for processing information for, regarding, and/or for facilitating, the commercialization, development, marketing, sale, transfer, licensing, and/or monetization, of intellectual property").  Even the name of that application reveals its byzantine, made-for-litigation nature.   Defendants are not asking the Court to pre-judge those cases, but they are asking the Court to put Mr. Joao and his attorneys on notice that such future cases need to be litigated in good faith and in line with the Federal Rules of Civil Procedure.  *See*, *e.g.*, *Gust, Inc.*, 2016 WL 7165983, at *9 ("Given AlphaCap's refusal to acknowledge the invalidity of its patents, an award of attorneys' fees in this case will deter any future frivolous lawsuits asserting infringement of the AlphaCap Patents against corporations that host crowdfunding platforms.").

1.     **Joao and its attorneys asserted claims that were undisputedly barred by *res judicata*.**

In its TAC, Joao accused defendant Manwin Billing of infringing the patents-in-suit. (Doc. 23, ¶ 1.)  As explained above, the Manwin Defendants notified Joao at least as early as December 10, 2013, when they filed their Answer, that Manwin Billing was formerly known as Ahava – the same Ahava that Joao previously sued for patent infringement in the Central District of California.  (Doc. 46 at 1, 6.)  Moreover, Joao was represented by Stephen Ritcheson in its first case against Ahava and in this action.  Therefore Joao and its counsel were well aware that Joao's prior suit against Ahava was dismissed with prejudice and barred by *res judicata*.

As if that were not enough to at least prompt Joao and its attorneys to investigate whether they could re-assert claims against Manwin Billing, the Manwin Defendants' *also* explained that Manwin Billing was formerly known as Ahava in their initial disclosures, as well as in their discovery responses.  (Bach Decl., Ex. 7 at 1; Ex. 8 at 1, 5.)  The Manwin Defendants also produced documents unequivocally demonstrating that Ahava's name had been changed to Manwin Billing.  (Bach Decl., Ex. 9.)  Indeed, Joao expressly acknowledged that Manwin Billing was formerly known as Ahava in its infringement contentions.  (Bach Decl., Ex. 5 at 1.)  Nevertheless, Joao and its attorneys refused to dismiss its claims against Manwin Billing.

2.     **Joao and its attorneys asserted claims against licensed entities.**

In its TAC, Joao accused the websites www.clubjenna.com and www.playboylive.com of infringing the patents-in-suit.  (Doc. 23, ¶¶ 15, 18, 32, 39.)  Mr. Joao, however, previously sued Playboy Enterprises, Inc. and Club Jenna, Inc. for infringing the '010 patent in the Eastern District of Texas in November 2009.  *Joao Control & Monitoring Sys. of Texas, LLC v. Playboy Enters, Inc. et al.*, No. 6-09-cv-00499.  The parties settled that lawsuit in 2010 with a license to the '010 patent.  The Manwin Defendants reminded Joao of this license in their Answer.  (Doc. 46, Ninth Affirmative Defense.)  Nevertheless, Joao and its attorneys refused to dismiss its infringement claims directed to these websites.

3.       **Joao and its attorneys asserted infringement claims against websites that do not offer "Webcam systems" or that the Manwin Defendants do not own.**

As discussed above, Joao accused 49 separate websites of infringing the '046 and '010 patents in its TAC.  (Doc. 23, ¶¶ 11, 15, 18, 32, 39.)  Indeed, throughout its four complaints, Joao ***only*** accused the Manwin Defendants' purported "Webcam systems" of infringement.  (Doc. 23, ¶¶ 39-43.)  Many of the accused websites, however, did not contain any webcams whatsoever. Indeed, the Manwin Defendants specifically noted in their motion to dismiss that at least two of the websites identified in the TAC did not contain any webcams.[9]  (Doc. 26, n.4.).  If Joao and its attorneys had reviewed these websites before filing the TAC—***as they were obligated to do***— they would have learned that under Joao's expressed infringement theory (as described in all four complaints), many of Joao's claims were baseless.[10]

B.       **This Case Stands Out because Joao and Its Attorneys Advanced Meritless Arguments Throughout This Case.**

Over the last four and a half years, Joao and its attorneys vigorously pursued claims against the Manwin Defendants in the face of controlling law rendering Joao's claims baseless. For example, Joao (i) pursued its infringement claims despite Federal Circuit decisions holding similar Internet-related alleged inventions obvious or unpatentable, (ii) provided misleading information to this Court regarding PTAB determinations, (iii) failed to tell the Court that other tribunals had invalidated the patents-in-suit, and (iv) continued its case against the Manwin Defendants despite a case dispositive claim construction.

---

[9] The sole website identified in Joao's initial Complaint, www.jessejane.com, also did not offer webcams.  (Doc. 26, n.4.)

[10] Joao also asserted infringement claims against a website that is not owned by any of the Manwin Defendants: www.eurorevenue.com.  The Manwin Defendants brought this deficiency to Joao's attention on April 7, 2014.  (Bach Aff., Ex. 10.)   Nevertheless, Joao and its attorneys never dropped their claims aimed at this website.

1.      **This case stands out because the alleged invention – a well-known task + the Internet – was known to be unpatentable.**

Even before *Alice*, the Federal Circuit held that merely applying the Internet to well-known tasks – such as transmitting data from one device to another – is obvious and not-patentable.  *See*, *e.g.*, *Soverain Software LLC v. Newegg Inc.,* 705 F.3d 1333, 1340 (Fed. Cir. 2013).  Specifically, the Federal Circuit in *Soverain Software* and *In re Mettke*, 570 F.3d 1356, 1360-61 (Fed. Cir. 2009), found the application of the Internet to known systems was obvious as of 1994 and 1995, *before* the 1996 priority date of Joao's asserted claims.  Therefore, when Joao sued the Manwin Defendants in 2012, Joao and its attorneys should have been aware that Joao's monitoring patents were invalid because they are directed to nothing more than "[t]he surveillance of property in order to provide security – a well-known concept that humans have always performed – and that [employ] generic computer devices connected to a network and the Internet."  (Doc. 148.)

Joao and its attorneys certainly should have known that Joao's patent claims could not survive scrutiny following the Supreme Court's decision in *Alice*.  In fact, in a very recent decision, another judge in this District expressly recognized that pursuing patent infringement litigation with notice that the patents at issue could not survive scrutiny under 35 U.S.C. § 101 and *Alice* serves as a basis for finding a case "exceptional" under *Octane*.  *Gust, Inc.*, 2016 WL 7165983, at *5 (finding case "exceptional" where "AlphaCap's lawsuit against Gust was 'frivolous' and 'objectively unreasonable' in light of *Alice* and its progeny").  In particular, the court in *Gust* recognized:

> *Alice* and its holding that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention," gave AlphaCap clear notice that the AlphaCap Patents could not survive scrutiny under 35 U.S.C. § 101.  *Alice*, 134 S. Ct. at 2358.  It follows that no litigant could have a reasonable expectation of success on the merits in AlphaCap's patent infringement lawsuit against Gust.

*Id*.  Notably, like the litigant in *Gust*, Joao and its attorneys stubbornly insisted that Joao's patents contained an "inventive concept" due to the inclusion of computers and other generic electronic components—an argument rightfully rejected by this Court.  *See*, *e.g.*, Order at 12

(citing, *inter alia*, *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011)).  *See also Gust, Inc.*, 2016 WL 7165983, at *9 ("Given AlphaCap's refusal to acknowledge the invalidity of its patents, an award of attorneys' fees in this case will deter any future frivolous lawsuits asserting infringement of the AlphaCap Patents against corporations that host crowdfunding platforms.").

   2. **This case stands out because Joao and its attorneys tried to mislead the Court regarding section 101.**

   Defendants filed their motion for judgment on the pleadings based on section 101 on September 18, 2015.  Over the next 12 months, the parties notified the Court of other court and Patent Office rulings affecting the Joao monitoring patents.  Joao, however, used its notices to argue that the Patent Office had rejected the defendants' "inventive concept" arguments in *inter partes* review proceedings ("IPRs"), knowing full well that the Patent Office is precluded by statute from considering such section 101 arguments in an IPR.  *See* 35 U.S.C. § 311(b) ("A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent ***only*** on a ground that could be raised ***under section 102 or 103*** and only on the basis of prior art consisting of patents or printed publications") (emphasis added); *see also* 37 C.F.R. § 42.104(b)(2).  An "inventive concept" is the *sine qua non* of patentability under section 101.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (explaining "step two of [the section 101] analysis as a search for an '***inventive concept***'") (emphasis added).  Novelty and obviousness, on the other hand, are the *sine qua non* of patentability under sections 102 and 103.  35 U.S.C §§ 102, 103.

   Thus, when Joao repeatedly advised the Court that the PTAB had affirmed the validity of Joao's patents and found an "inventive concept," Joao was either (i) knowingly providing irrelevant authority to the Court because the PTAB's decisions under sections 102 and 103 have no bearing on patentability under section 101, or (ii) trying to mislead the Court into believing

that the PTAB had rejected *Alice* challenges.[11]  Either way, Joao's arguments were disingenuous – especially after Defendants repeatedly pointed out the logical dissonance.

For example, on February 22, 2016, Joao filed a Notice of Supplemental Authority stating that certain "PTAB decisions denying institution of the Inter Partes Review(s) ***are evidence of the existence of an inventive concept*** for the claimed inventions of" the patents-in-suit.[12]  (Doc. 133 at 1-2 (emphasis added).)  The Manwin Defendants responded on February 29, 2016, expressly stating that the PTAB institution decisions "have no bearing on Defendants' pending Fed. R. Civ. P. 12(c) motion for judgment on the pleadings because the PTAB cannot evaluate challenges under Section 101 and *Alice* in an IPR as a matter of law."  (Doc. 134.)

But Joao's misrepresentations did not stop there.  On March 31, 2016, Joao made the same argument to the Court again, stating:

> The Patent Trial and Appeal Board ("PTAB") recently denied institution of ***inter partes review*** ("IPR") on the '010 Patent. ***These PTAB decisions are unequivocal affirmations of the strength and validity of the '010 Patent.*** The PTAB has also denied institution of IPR proceedings on a number of claims from the JCMS Patents. Despite the somewhat repetitious challenges to the JCMS Patent Portfolio, the patents and claims continue to emerge from reexamination *and **inter partes reviews intact with their validity and patentability affirmed***.

(Doc. 137 (emphasis added).)  In the end, Joao must have been trying to convince this Court that the Patent Office had rejected Defendants' *Alice* arguments as that was the ***only*** issue before the Court at the time Joao made these submissions.

### 3.     This case stands out because Joao and its attorneys failed to inform the Court that the patents-in-suit were invalidated in numerous other tribunals.

As described in greater detail above, Joao and its attorneys also never informed the Court that other district courts had invalidated its patents.  Joao and its attorneys never informed this

---

[11] Notably, the PTAB found the challenged claims in Joao's monitoring patent invalid in all twelve of the IPRs that were instituted.

[12] *See also* Plaintiff's Claim Construction Briefs [Doc. Nos. 90, 95 in case no. 12-cv-6781], discussing the prosecution history and relation of the Patents-in-Suit to the patents on which the PTAB denied institution of the *Inter Partes* Review(s).

Court that a judge in the Northern District of Illinois found the asserted claims of the '046 patent invalid under 35 U.S.C. § 101.  Nor did Joao or its attorneys inform this Court that a judge in the Western District of Texas ruled that claim terms in both patents-are indefinite under 35 U.S.C. § 112.  Additionally, Joao and its attorneys did not tell the Court that the PTAB found the '046 patent invalid as obvious under 35 U.S.C. § 103.  Those decisions should have ended this case, and Joao's and its attorneys' failure even to acknowledge those decisions demonstrates this case was about forced settlements and not good faith patent infringement claims.

  **4.**  **This case stands out because Joao continued to pursue its case against the Manwin Defendants in the face of a case-dispositive claim construction.**

  At the May 1, 2015, claim construction hearing, this Court recognized that its construction of "monitoring" in the asserted claims "is probably the whole ball game for [the Manwin Defendants]."  (Doc. 117, 104:7-8.)  At the end of that hearing, the Court further stated that "I do think that 'monitoring' is one that is . . . frankly likely to go against the plaintiffs. . . . . I don't think there is any harm in my telling [you what] my thinking is on that one which strikes me as a pretty big one, at least with respect to where [the Manwin Defendants] are concerned, because that really is, it seems to me, to be pretty dispositive."  *Id*. at 105:9-17.

  On August 6, 2015, this Court entered its claim construction order.  (Doc. 119.)  That Order should have ended Joao's case against the Manwin Defendants.  Any reasonable litigant (and attorney) would have recognized defeat and dismissed its case against the Manwin Defendants – who clearly do not offer adult entertainment videos for the purpose of "control, security, oversight, or supervision."  Joao, however, doubled-down on its case and its standard settlement (with the refusal to covenant not to sue in the future or license the entire patent family).  For example, at the September 3, 2015, status conference, the Court recognized that the "Manwin defendant[s] also have . . . what I think is based on my claim construction, a pretty strong Rule 56 motion" and asked Joao's counsel "are there any facts that would support claims going forward against the Manwin defendants?"  (Doc. 127, 4:23-5:5.)  In response, Mr. Ritcheson disagreed and demanded more discovery.  "What we're looking at, as I mentioned in my letter, has to do with the certain video services that are offered by Manwin in which the

viewer watches for purposes of controlling one of the models." *Id.* at 5:9-12.  Mr. Ritcheson told

the Court Joao intended to "continue with discovery and take depositions." *Id.* 6:6-8; *see also*

Doc. 121 (Ritcheson letter insisting on the need to complete fact discovery, including email

discovery, fact depositions, and RFAs, and expert discovery, including opening and rebuttal

reports, before permitting summary judgment motions).  Exchanges like this further demonstrate

that Joao and its attorneys were never sincere about its infringement allegations.  Instead, Joao's

goals were to increase the burden on the Manwin Defendants in order to extract a settlement that

had no relation to potential liability, so the details did not matter to Joao or its attorneys.[13]

        In similar circumstances, courts frequently have found cases to be exceptional—even

under the heightened pre-*Octane* standard.  *See Cartner v. Alamo Group, Inc.*, 561 Fed. Appx.

958 (Fed. Cir. 2014) (awarding attorneys' fees where Plaintiff pursued an infringement claim

even though the court's claim construction rendered it frivolous); *Phonometrics, Inc. v. Westin*

*Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003) (affirming exceptionality finding when party

pursued claim that was baseless due to a prior claim construction by the court); *Sorkin v.*

*Universal Bldg. Prods. Inc.*, No. 1:08-cv-133, 2010 WL 519742, at *3 (E.D. Tex. Feb. 9, 2010)

(same); *Thomas & Betts Power Sols., L.L.C. v. Power Distrib., Inc.*, No. 3:07CV167-HEH, 2008

WL 373639, at *2 (E.D. Va. Feb. 8, 2008) (awarding attorneys' fees where plaintiff "continued

---

[13] Joao's refusal to accept determinations that were not in its favor is further evidenced by its
practice of consistently filing meritless reconsideration motions.  Joao sought to make a motion
pursuant to Fed. R. Civ. P. 60(b)(6) for relief from the Court's November 8, 2013, dismissal
Order, over a year after that order was issued.  (Doc. 99.)  The Court denied the request based on
the parties' letters.  (Doc. 102.)  Joao later moved for reconsideration of the Court's Order
dismissing the case, but that motion was denied before the Manwin Defendants' time to oppose it
had been reached.  (Doc. 158.)  Such behavior further contributes to the "totality of the
circumstances" warranting an award of fees under section 285.  *See Homeland Housewares, LLC
v. Sorensen Research & Dev. Tr.*, 581 Fed. Appx. 877, 879 (Fed. Cir. 2014) (affirming fee award
premised in part upon parties "filing multiple motions for reconsideration that the court deemed
were without merit"); *see also Lyda v. Fremantlemedia N. Am., Inc.*, No. 10 Civ. 4773, 2012 WL
7828200, at *2 (S.D.N.Y. Aug. 9, 2012) (awarding fees under section 285 where plaintiff was
informed of deficiencies in the case, but "continued to prosecute th[e] case, resulting in briefing
on two separate Motions to Dismiss and a frivolous Motion for Reconsideration.").

to pursue an infringement claim in this Court instead of seeking a final order so that it could appeal this Court's claim construction" even though the "claims [] had no chance of success"). This pattern has continued post-*Octane*. *See also Biax Corp. v. Nvidia Corp.*, 626 Fed. Appx. 968, 971 (Fed. Cir. 2015) ("[Plaintiff] could not continue to assert its infringement claims in the district court unless it had an objectively reasonable infringement position under the district court's claim construction."); *Lugus IP, LLC v. Volvo Car Corp.*, No. 12-2906, slip op. at *14 (D.N.J. Mar. 26, 2015) (fees appropriate where Plaintiff had no objectively reasonable basis for its infringement claims). This same reasoning warrants a fee award here.

**C.    This Case Stands Out because Joao and Its Attorneys Engaged in Unreasonable Litigation Conduct.**

Joao is not a typical "patent assertion entity" or "patent troll" looking for a quick no-hassle settlement. Indeed, Joao demands six-figure settlements—regardless of whether that amount is in any way connected to what Joao could receive as a reasonable license fee—on terms that leave open the door to repetitive, future suits. To achieve such one-sided settlements, Joao and its attorneys relied on tactics that make litigation expensive and burdensome.[14]

**1.    This case stands out because Joao and its attorneys repeatedly tried to subvert the cooperative efforts of the joint defense group.**

Joao and its attorneys engaged in bad faith tactics to hinder cooperation among co-defendants in these consolidated actions in an apparent means to undermine the efficient, cost-effective resolution of the actions. First, notwithstanding Joao's attorney's arguments as recently as the preliminary hearing on this Motion on March 6, the Court unequivocally consolidated these cases on November 12, 2013. (Doc. 40.) On December 19, 2013, the Court entered a Case

---

[14] Even with respect to the instant motion, Joao and its attorneys have threatened to raise purported conduct on the part of the Manwin Defendants as an attempt to excuse Joao's own behavior. Joao, however, cannot attempt to avoid or reduce a fee award simply by improperly pointing fingers back at the Manwin Defendants. *See*, *e.g.*, *Gust, Inc.*, 2016 WL 7165983, at *15-16 (a losing party's "assignment of blame [on the prevailing party] is misdirected" and recognizing that the patent holder "chose to file this lawsuit and bears responsibility for its length and complexity.").

Management Plan governing both cases **that required the parties to serve documents on all parties** in the consolidated cases.  (Doc. 48, Section 8(a).)[15]  Moreover, the Federal Rules of Civil Procedure expressly require service of all pleadings and discovery on all parties.  Fed. R. Civ. P. 5(b)(1).

This is a simple and non-controversial requirement designed to ensure proper notice of all claims and arguments (*i.e.* due process) and keep all parties informed of developments so that they can efficiently move a case to final judgment.  Nevertheless, Joao and its attorneys repeatedly refused to abide by this rule.  In a particularly egregious example, during claim construction briefing in October and November 2014, Joao failed to serve an expert report on the Manwin Defendants that Joao included only in its claim construction reply served on co-defendant ATS, ***even though Joao's expert report expressly addressed the Manwin Defendants***.  (Doc. 117, 103:4-5).  The Manwin Defendants belatedly discovered that Joao had included arguments addressed to them in this expert report on the eve of the claim construction hearing.  *Id*. at 48:11-19.  Joao and its counsel were either intentionally attempting to hide the report from the Manwin Defendants, or were grossly negligent.  Either explanation supports an award of fees in light of all the circumstances.

In another example of misconduct, when exchanging redlined drafts among counsel in the course of negotiating joint filings, Joao's attorneys repeatedly included surreptitious changes in its drafts, in addition to those shown in their redlined changes.  (Bach Decl., Exs. 11-13.)  This conduct stands out from the normal level of decorum expected between opposing parties and their counsel.  One can be a zealous advocate without resorting to this sort of behavior.

---

[15] The Court made a similar Order in its November 8, 2013, hearing in the *JCMS v. City of Yonkers* case, a few days before that case was consolidated into the Manwin Defendants case. *See* ATS Defendants' Motion for Attorneys' Fees ("ATS Br."), Case No. 12-cv-07734, at section II.B.4 ("Counsel of record are to be included in all correspondence.").  Here, and below, the Manwin Defendants also rely upon and cite to relevant discussions in the ATS Defendants' brief. In the interest of brevity and avoiding repetition, the Manwin Defendants incorporate by reference herein all cited portions of the ATS' Defendants briefing.

**2.      This case stands out because Joao and its attorneys needlessly drove up the cost of litigation through dilatory discovery tactics.**

Joao and its attorneys engaged in similarly troubling misconduct in discovery, including:

- Joao did not produce a pending application related to the patents-in-suit and even entered into settlement discussions with co-defendant ATS without disclosing that application or including it in their purported settlement – the parties only learned of that application when it was surprisingly published by the Patent Office (ATS Br. at section II.B.2);

- Joao's sole owner – Raymond Joao – refused to produce all documents required by a subpoena in this case *even after being ordered to do so by this Court* (ATS Br. at section II.B.7);

- Joao obtained documents by subpoena in this case from third-party, Streammate, but did not notify the Manwin Defendants or provide them with copies—despite being required to do so and ignoring repeated requests for those documents—until after Joao had filed a pre-motion letter based on the very documents it had failed to disclose (Docs. 99, 100.);

- Joao refused to produce responsive and relevant documents from prior actions including key deposition exhibits, other defendants' prior art and invalidity contentions relating to the same patents (thereby trying to force defendants to re-invent the wheel), and settlement agreements (thereby trying to hide the amounts other defendants had paid to escape this litigation) (Declaration of Arthur Gollwitzer III dated April 7, 2017 ("Gollwitzer Decl."), ¶ 6, Exs. 1-7); and

- At the same time, Joao produced over 88,000 pages of duplicative documents in a random manner rather than in the order they were kept in the ordinary course of business thereby driving up defendants' review costs.  (Gollwitzer Decl., ¶¶ 3-5, 7.)

Indeed, Joao cannot dispute that in bringing over 75 lawsuits, it has been on an aggressive litigation campaign.  Therefore, it is hard to imagine how Joao and its attorneys did not have all of its documents ready to produce in every single case as a matter of course.  *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1321, 1322-25 (Fed. Cir. 2011) ("A duty to preserve evidence arises when . . . . there is a reasonable belief that litigation is foreseeable," and concluding that "litigation was reasonably foreseeable . . . when [Plaintiff] had articulated a time frame and a motive for implementation of [its] litigation strategy.").  But instead, Joao made the Manwin Defendants fight tooth-and-nail for discovery Joao likely had already produced (or should have produced) dozens of times.

The Court correctly observed that defendants never brought these discovery problems to its attention.  Discovery in this case, however, has proceeded in phases.  From December 2013 until the claim construction ruling in August 2015, the Case Management Order directed the parties to focus on claim construction discovery.  (Doc. 48 at ¶ 6.)  Then, the Court stayed all discovery from September 2015 until its conclusion.  (Doc. 123.)  The Manwin Defendants properly chose not to waste judicial resources raising discovery motions when the issues were stayed.  The Manwin Defendants should not be penalized for trying to end this case as efficiently as possible.

Moreover, in *Octane,* the Supreme Court made clear that ***deterrence*** is one of the purposes of awarding attorneys' fees in patent cases.  *Octane*, 134 S. Ct. at 1756 n.6.  Therefore, this Court should send a clear message to Mr. Joao – who has more than 100 other patents and applications, incredibly including a patent application purportedly covering the process of monetizing patents – and its attorneys that discovery tactics like these are not allowed in this or any other federal court, and that discovery gamesmanship has a price.

### Conclusion

By a preponderance of the evidence, considering the totality of the circumstances of Joao's and its attorney's conduct, this case is exceptional.  *See Octane*, 134 S. Ct. at 1756 n.6 (the nonexclusive list of factors courts should consider includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence").  Thus, the Manwin Defendants respectfully ask the Court to award the Manwin Defendants their attorneys' fees against Joao pursuant 35 U.S.C. § 285.  The Manwin Defendants also request that the Court make its fee award joint and several against Joao and its attorneys.  28 U.S.C. § 1927.

DATED:   April 7, 2017                         MICHAEL BEST & FRIEDRICH LLP


                                               By:  */s/ Arthur Gollwitzer III*_____
                                                    Arthur Gollwitzer III
                                                     agollwitzer@michaelbest.com
                                                    Terrace 7 Building
                                                    2801 Via Fortuna
                                                    Suite 300
                                                    Austin, Texas 78746
                                                    Telephone: (512) 640-3161
                                                    Facsimile:  (312) 222-0818

                                                    Rachel N. Bach
                                                     rnbach@michaelbest.com
                                                    100 East Wisconsin Avenue
                                                    Suite 3300
                                                    Milwaukee, Wisconsin 53202
                                                    Telephone: (414) 225-2768
                                                    Facsimile:  (414) 277-0656


                                               MITCHELL SILBERBERG & KNUPP LLP

                                                    Karin G. Pagnanelli
                                                     kgp@msk.com
                                                    Bradley J. Mullins
                                                     bym@msk.com
                                                    12 East 49th Street, 30th Floor
                                                    New York, New York 10017-1028
                                                    Telephone: (212) 509-3900
                                                    Facsimile:  (212) 509-7239

                                                    *Attorneys for the Manwin Defendants.*

**Certificate of Service**

I, Arthur Gollwitzer III, an attorney of record in this matter, certify that on April 7, 2017, I caused a copy of the following document:

**Manwin Defendants' Motion for Attorneys' Fees**

to be filed with the Clerk of Court of the United States District Court for the Southern District of New York by electronic (ECF) filing, which provides service on all counsel of record by e-mail delivery.


*/s/ Arthur Gollwitzer III*
Arthur Gollwitzer III