UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



JOAO CONTROL & MONITORING SYSTEMS, LLC,

    Plaintiff,

-v-

DIGITAL PLAYGROUND, INC., *et al.*,

    Defendants.

No. 12-cv-6781 (RJS)

JOAO CONTROL & MONITORING SYSTEMS, LLC,

    Plaintiff,

-v-

CITY OF YONKERS, *et al.*,

    Defendants.

No. 12-cv-7734 (RJS)

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Defendants in these related patent infringement actions – a group of entities referred to as the "Manwin Defendants" and American Traffic Solutions, Inc. ("ATS") – collectively move for attorneys' fees pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power. For the reasons set forth below, Defendants' motions are denied.[1]

---

[1] The Manwin Defendants consist of Defendants Manwin D.P. Corp.; Mindgeek S.ar.l.; Manwin Billing MU Ltd.; Manwin Billing US Corp.; Manwin Billing Ireland, Ltd.; Johnsburg Ltd.; Licensing IP International S.ar.l., 9219 Quebec Inc. (formerly doing business as "Manwin Canada"); and Manwin Billing CY Ltd.

## I. Background[2]

The Court assumes the parties' familiarity with the facts and history of this case, which are recounted in the Court's August 6, 2015 Memorandum and Order. (Doc. No. 119.) Accordingly, this Opinion and Order sets out only those facts relevant to the instant request. Non-party Raymond Joao is the sole named inventor of U.S. Patent Nos. 6,587,046 ("the '046 patent") and 7,277,010 ("the '010 patent"). (*Id.* at 2.) Joao assigned those patents to Plaintiff Joao Control & Monitoring Systems, LLC, of which he is the sole member. (*Id.*) As the Court recognized in its order entering judgment on the pleadings, the '046 and '010 patents "are virtually identical, and, broadly speaking, each is for a computerized system designed to remotely monitor or control a vehicle or premises while receiving data from that vehicle or premises via the internet." (Doc. No. 148 at 2.)

On September 7, 2012, Plaintiff filed case number 12-cv-6781 (RJS), *Joao Control & Monitoring Systems, LLC v. Digital Playground, Inc.*, seeking damages for infringement of the '046 and '010 patents. After two rounds of amendment, Plaintiff filed its Third Amended Complaint against Digital Playground and the Manwin Defendants on March 11, 2013. (Doc. No. 23.)

Plaintiff filed case number 12-cv-7734 on October 17, 2012, naming the City of Yonkers as the sole defendant. The case was originally assigned to Judge Karas, and on January 4, 2013,

---

[2] In ruling on Defendants' motions, the Court has considered the following documents from case number 12-cv-6781: the Manwin Defendants' motion for attorneys' fees (Doc. No. 175 ("Manwin Mot.")), Plaintiff's corrected opposition (Doc. No. 189 ("Opp'n")), the Manwin Defendants' reply (Doc. No. 190 ("Manwin Reply")), all supporting declarations and attachments thereto, and the notice of supplemental authority filed on August 16, 2017 (Doc. No. 194). The Court has also considered the following documents from case number 12-cv-7734: ATS's motion (12-cv-7734, Doc. No. 263) and supporting memorandum (12-cv-7734, Doc. No. 264 ("ATS Mem.")), Plaintiff's corrected opposition (12-cv-7734, Doc. No. 269, which is the same document as is reflected at docket number 189 in case number 12-cv-6781), ATS's reply in support of its motion (12-cv-7734, Doc. No. 267 ("ATS Reply")), all supporting declarations and attachments, and all supplemental authorities filed by the parties on August 16 and September 5, 2017 (Doc. Nos. 273, 274). Throughout this opinion, docket citations refer to case number 12-cv-6781 unless otherwise noted.

ATS filed a pre-motion letter seeking to intervene under Federal Rule of Civil Procedure 24. (12-cv-7734, Doc. No. 7.) Although ATS was the "manufacturer of the products and systems that [were] subject to the patent infringement claims" (*id.* at 1), Plaintiff initially opposed ATS's request, arguing that intervention would require it to "spend significant time and resources analyzing each of ATS's products and systems in light of the patents in its portfolio . . . in order to determine what claims of infringement must be brought in this case." (12-cv-7734, Doc. No. 10 at 2.) Nonetheless, barely a month later – notwithstanding its professed aversion to reviewing ATS's product offerings – Plaintiff sued ATS in the District of Delaware for infringing the '046 and '010 patents. (D. Del. Case. No. 13-cv-243, Doc. No. 1.) Plaintiff ultimately stipulated to ATS's intervention in this action on March 13, 2013, and filed an amended complaint naming ATS as a defendant on March 22, 2013. (12-cv-7734, Doc. Nos. 18, 23.)

Despite ATS's entry into this case, Plaintiff served the Delaware complaint on ATS on March 25, 2013. (D. Del. Case. No. 13-cv-243, Doc. No. 5.) On April 15, 2013, ATS moved to dismiss Plaintiff's Delaware complaint, arguing that the two cases were duplicative and that the New York case took precedence under the "first-filed rule." (D. Del. Case No. 13-cv-243, Doc. No. 7 at 5–9). On that same day, ATS answered the amended complaint in this case and included three counterclaims seeking declaratory judgments of invalidity as to the '046 and '010 patents. (12-cv-7734, Doc. No. 34.) Although Plaintiff's two cases against ATS were proceeding simultaneously, Plaintiff opposed dismissal in the Delaware action (D. Del. Case No. 13-cv-243, Doc. No. 11), and subsequently moved to dismiss ATS's counterclaims in this suit, arguing that the Delaware action was the first-filed case and that Plaintiff would be "unduly and unreasonably" burdened if ATS were permitted to challenge the '046 and '010 patents in this case. (12-cv-7734, Doc. No. 43.)

3

On July 15, 2013, Judge Forrest, to whom this case had been reassigned, denied Plaintiff's motion to dismiss, recognizing that "there is no question that the current action is the first-filed action." (12-cv-7734, Doc. No. 58 at 4 n.1.) In light of Judge Forrest's ruling, Plaintiff voluntarily dismissed the Delaware lawsuit two months later. (D. Del. Case No. 13-cv-243. Doc. Nos. 20, 21.) On October 22, 2013, the case was reassigned to my docket as related to Plaintiff's suit against the Manwin Defendants. Three weeks later, Plaintiff's two suits were consolidated for discovery and pretrial proceedings, including claim construction. (12-cv-7734, Doc. No. 101.)

After about a year of discovery, the parties filed claim construction papers in late 2014. (Doc. Nos. 90, 93–96.) Following a claim construction hearing on May 1, 2015, the Court issued its claim construction order adopting some of the positions advocated by each side on August 6, 2015. (Doc. No. 119.) Defendants thereafter moved for judgment on the pleadings. (*See* Doc. Nos. 124, 125.) On September 30, 2016, the Court granted judgment for Defendants, concluding that Plaintiff's claims were collaterally estopped by the Northern District of Illinois's decision in *Joao Control & Monitoring Systems, LLC v. Telular Corp.*, 173 F. Supp. 3d 717 (N.D. Ill. 2016) and that, in any event, Plaintiff's patents were invalid under 35 U.S.C. § 101, which sets the boundaries of patent-eligible subject matter. (Doc. No. 148.) Plaintiff subsequently filed a motion for reconsideration, which the Court denied on October 31, 2016. (Doc. No. 158.) Thereafter, Plaintiff filed an appeal to the United States Court of Appeals for the Federal Circuit, but dismissed that appeal before briefing. (*See* Fed. Cir. Case No. 17-1133.)

After Plaintiff dismissed its appeal to the Federal Circuit, Defendants filed a pre-motion letter seeking leave to move for attorneys' fees under 35 U.S.C. § 285 (the Patent Act), 28 U.S.C. § 1927, and the Court's inherent authority. (Doc. No. 161.) The Manwin Defendants argue that fees are justified as a result of (1) Plaintiff's inadequate pre-suit investigation (including Plaintiff's

4

assertion of claims that were barred by the doctrine of collateral estoppel); (2) Plaintiff's "meritless" substantive positions; and (3) Plaintiff's "unreasonable" conduct throughout this litigation. (Doc. No. 175.) ATS, for its part, argues that fees are warranted because of (1) Plaintiff's opposition to its entry into this case and subsequent attempt to maintain two lawsuits against it; (2) Plaintiff's dilatory or otherwise improper conduct during discovery and settlement negotiations; and (3) Plaintiff's unnecessary motion practice. (12-cv-7734, Doc. No. 264.) Because each Defendant adopted the arguments made in the other Defendant's brief, the Court treats the arguments as made by both Defendants.

## II. ATTORNEYS' FEES UNDER THE PATENT ACT

Section 285 of the Patent Act authorizes courts to "award reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Unlike the Federal Circuit's previously applicable test, which required a finding of either "litigation-related misconduct of an independently sanctionable magnitude" or "that the litigation was both 'brought in subjective bad faith' and 'objectively baseless,'" *Octane Fitness* permits district courts to "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). In doing so, courts are directed to consider factors including, but not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). "After *Octane Fitness*, a fee-

5

seeking party must show that it is entitled to § 285 fees by a 'preponderance of the evidence.'" *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1305 (Fed. Cir. 2017) (quoting *Octane Fitness*, 134 S. Ct. at 1758).

Defendants argue that Plaintiff's substantive positions were unreasonable throughout this lawsuit because Plaintiff should have either (1) realized before bringing suit that the '046 and '010 patents were invalid under 35 U.S.C. § 103, which dictates that "[a] patent for a claimed invention may not be obtained" if the "claimed invention as a whole would have been obvious" at the time the patent application was filed, or (2) understood, after the Supreme Court issued its opinion in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), that the '046 and '010 were directed at patent-ineligible abstract ideas and did not sufficiently transform those ideas into patent-eligible inventions within the scope of 35 U.S.C. § 101. (Manwin Mot. at 13–14; ATS Mem. at 14–16.) Although the Court agrees that Plaintiff's case was weak, the Court cannot agree that it was so "exceptionally meritless" as to justify the award of fees based on this factor alone. *Octane Fitness*, 134 S. Ct. at 1757 (noting that, in some circumstances, "exceptionally meritless claims" may justify fee-shifting without regard to other considerations).

As to Defendants' Section 103 argument that Plaintiff "should have been aware that Joao's monitoring patents were invalid" when it filed suit in 2012, the law is clear that a determination regarding whether a patented invention is obvious is a fact-bound question. *See Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 646 (Fed. Cir. 2017) ("Obviousness under 35 U.S.C. § 103 is a question of law based on underlying questions of fact."); *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017) ("What the prior art teaches, whether a person of ordinary skill in the art would have been motivated to combine references, and whether a reference teaches away from a claimed invention are questions of fact."). The Court has not considered – or even been asked to consider

6

– whether Plaintiff's patents covered obvious inventions, and will not make that determination on the record now presented. Accordingly, the Court is not prepared to find that Plaintiff had an obligation to withdraw its patent claims and dismiss these actions simply because some other patents, evaluated in the context of different prior art, had been invalidated. (Manwin Mot. at 13.)

Defendants' Section 101 argument presents a closer call. In *Alice*, the Supreme Court explicitly held that, while abstract ideas generally may not be patented, a claim that contains an abstract idea may be protected where it "contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 72–73, 77 (2012)). The Court further confirmed that the addition of a computer to an abstract idea did not transform the abstract idea into patent-eligible subject matter. *Id.* at 2358 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."). In the wake of that decision, Plaintiff's patents – which, as this Court recognized, simply set out the generalized, abstract ideas of monitoring and control, implemented through "a number of generic electronic devices in addition to a computer" – were very likely to fail. (Doc. No. 148 at 12.) *See also Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015) (rejecting a patent "directed to the . . . abstract idea [of] monitoring locations, movements, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions").[3]

---

[3] Even before *Alice*, the law was clear that (1) abstract ideas were not patent-eligible subject matter, *see, e.g., Mayo*, 566 U.S. at 71–72, and (2) simply restricting an abstract idea "to a particular technological environment" was not sufficient to transform an abstract idea into patent-eligible subject matter, *Diamond v. Diehr*, 450 U.S. 175, 191–92 (1981) (citing *Parker v. Flook*, 437 U.S. 584 (1978)); *see also Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 198–99 (S.D.N.Y. 2013).

However, as Plaintiff points out, even after *Alice*, some courts upheld monitoring-and-control patents that at least somewhat resembled the claims here. *See, e.g., Chamberlain Grp., Inc. v. Linear LLC*, 114 F. Supp. 3d 614, 624–29 (N.D. Ill. 2015); *see also Network Congestion Solutions, LLC v. U.S. Cellular Corp.*, 170 F. Supp. 3d 695, 705 (D. Del. 2016). And while the Court agrees with Judge Pallmeyer that Plaintiff's '046 patent is clearly distinguishable from the patent that the Northern District of Illinois upheld in *Chamberlain*, *see Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717, 729 (N.D. Ill. 2016) (Pallmeyer, J.), the Court concludes that Plaintiff's decision to pursue this suit in the uncertain legal landscape before and immediately after *Alice* was not so unreasonable as to warrant fee shifting.

Moreover, it bears noting that although Defendants now claim that Plaintiff should never have brought these claims, or at the very least should have voluntarily dismissed them after *Alice*, Defendants themselves did not pursue these arguments until much later in this litigation. Significantly, ATS did not move to dismiss this suit at all, while the Manwin Defendants included neither a Section 101 argument nor a Section 103 theory in their motion to dismiss. (*See* Doc. No. 26.) Similarly, whereas Defendants now contend that Plaintiff should have voluntarily dismissed its complaints after the Supreme Court issued its opinion in *Alice*, Defendants did not attempt, in the immediate wake of that decision, to move for judgment on the pleadings. In fact, the Manwin Defendants waited until November 2014, after claim construction had been briefed, to raise the possibility of such a motion (Doc. No. 97), and then withdrew their request pending the Court's ruling on claim construction (Doc. No. 103). For its part, ATS did not raise the possibility of an *Alice*-based Rule 12(c) motion until July 2015. (*See* 12-cv-7734, Doc. No. 190.) Surely, Defendants would have pressed these arguments sooner had they been so obvious in 2012 or June 2014 (when *Alice* was issued) that Plaintiff's patents, which were entitled to the presumption of

8

validity under 35 U.S.C. § 282, were invalid. Put simply, the legal landscape, which can sometimes be obscured by the fog of litigation, often becomes clear only with the passage of time. Accordingly, the Court is not prepared to shift fees merely because Plaintiff did not voluntarily withdraw its claims in the wake of *Alice* based on its validly issued patents.[4]

Defendants next assert that the manner in which Plaintiff litigated this case – from its pre-suit investigation through its final motion for reconsideration – supports the award of attorneys' fees. (Manwin Mot. at 18–21; ATS Mem. at 4–14.) To be sure, these cases were highly contentious from the outset, prompting the Court to observe at one point that both sides seemed intent on "poking each other in the eye." (Doc. No. 170 at 35:20.) *See also Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (noting that, under *Octane Fitness*, the "conduct of the movant" is also relevant to the Court's determination of whether a case is "exceptional"). Nevertheless, Defendants point to several instances of alleged misconduct by Plaintiff as standing sufficiently apart from the general back-and-forth nature of litigation to justify fee shifting.

First, Defendants argue that Plaintiff's pre-filing investigation was exceptionally deficient because Plaintiff failed to recognize that (1) it had previously sued one of the Manwin Defendants' predecessor entities, Ahava, Inc., in California, and (2) it had previously licensed the patents-in-suit to some of the very same websites that it accused of infringement in this action. (Manwin Mot. at 10–11.) But the Manwin Defendants apparently missed the prior suit and licenses, too, since they raised neither defense in their motion to dismiss; had they done so, the parties might have saved substantial expense. (Doc. No. 26.)

---

[4] Were Plaintiff to file the same lawsuits now, almost four years after *Alice*, the result would surely be different. *See Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232, 238 (S.D.N.Y. 2016) (shifting fees because plaintiff should have recognized its patents were invalid under *Alice* when it filed suit eight months after *Alice* was issued).

9

Next, Defendants point to a number of incidents that they argue rise to the level of misconduct by Plaintiff and Plaintiff's counsel during the course of this litigation. In particular, Defendants place substantial weight on Plaintiff's efforts to keep two suits in place against ATS – one in Delaware and one here – which they claim was abusive, particularly in light of Judge Forrest's conclusion that this case was clearly the first-filed action. (ATS Mem. at 4–6; *see also* 12-cv-7734, Doc. No. 58.) But the fact remains that after Judge Forrest issued her ruling, Plaintiff dismissed the Delaware action with minimal prejudice to Defendants.[5] Defendants also rely on the fact that Raymond Joao surreptitiously recorded a telephonic settlement conference between the parties and their principals. (ATS Mem. at 7–8.) But Joao's conduct – while obnoxious, and arguably unethical since Joao is a licensed attorney, *see* N.Y.C. Bar Ass'n Formal Op. 2003-02: Undisclosed Taping of Conversations by Lawyers, *but see* ABA Comm. on Prof'l Ethics & Grievances, Formal Op. 01-422 (2001) – was largely a sideshow that had no significant impact on the outcome of the litigation. Further, Defendants argue that notices of supplemental authority that Plaintiff filed in opposition to Defendants' motion for judgment on the pleadings were so "mislead[ing]" as to support fee shifting. (Manwin Mot. at 14–15.) Having reviewed those materials again in connection with this motion, the Court is prepared to be more charitable than Defendants, and finds that, at worst, Plaintiff was mistaken as to the overlap between the scope of Sections 101, 102, and 103. (Opp'n at 17–18.) Accordingly, although the Court remains unimpressed by the quality of Plaintiff's submissions in this litigation, the Court is not prepared to conclude that Plaintiff was attempting to affirmatively mislead the Court.

---

[5] ATS asserts that Plaintiff "demanded a bargain" in exchange for dismissing the Delaware action. (ATS Mem. at 5; *see also* 12-cv-7734, Doc. No. 249 ¶ 15 ("Park Decl.") (asserting that Plaintiff "insisted that ATS agree to an amendment to the complaint that [Plaintiff] wanted in exchange for dismissal of the Delaware action.").) No detail is provided regarding exactly what Plaintiff said in making this "request," and the Court is unable to discern anything particularly sinister or unethical about the proposal on its face.

Otherwise, Defendants rely largely on allegations of misconduct during discovery that are hard to parse two years after the fact. For example, Defendants make much of Plaintiff's failure to serve all documents on all parties, Plaintiff's late production of documents, and the fact that when Plaintiff did produce documents, it did so in an "88,000-page jumbled mess, with no discernable order." (*See* ATS Mem. at 14.) But all of the discovery abuses alleged by Defendants could have been quickly and easily resolved through the discovery dispute resolution procedures provided by the Federal Rules of Civil Procedure and the Court's Individual Rule II.G; yet Defendants did not even attempt to make use of them. Of course, *Octane Fitness* does not require a litigant to bring every issue to the Court's attention as a prerequisite to recovering fees, but the fact that Defendants brought *none* of these discovery issues to the Court's attention strongly suggests that the conduct here was not truly exceptional.

At bottom, it appears that the acrimony permeating this case is largely attributable to Defendants' conviction that Plaintiff is a serial litigant and, essentially, a patent troll. Yet, labels and name-calling aside, the fact remains that Plaintiff's conduct in this case does not fit the typical pattern of "exceptional" cases meriting fee shifting. In the paradigmatic case, a plaintiff with no intention of testing the substance of its theories brings meritless claims to "extract a nuisance value settlement" based on the fact that defendants will be required to expend tens or hundreds of thousands of dollars in discovery. *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (finding "bad faith" under the pre-*Octane Fitness* standard); *see also Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1389 (Fed. Cir. 2017) (finding it relevant to the fee-shifting inquiry that Plaintiff "has settled the vast majority, if not all" of its infringement claims "for significantly below the average cost of defending an infringement lawsuit"); *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("[A]

pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination."). Here, Plaintiff maintained this suit through claim construction and a motion for judgment on the pleadings. Thus, unlike the plaintiff in *SFA Systems*, which "dismissed its claims . . . once it was faced with the prospect of a trial in which the merits of its claims would be tested," Plaintiff has pressed the merits of its patents vigorously over a period of years, presumably at substantial expense to itself (or to its counsel). 793 F.3d at 1351. While Plaintiff's faith in its patents was clearly misguided, its decision to continue with this suit weighs against the conclusion that this litigation was undertaken simply to score an easy settlement on the basis of a weak patent.

Finally, Defendants contend that Plaintiff has refused to graciously accept defeat, which Defendants contend supports fee shifting. (ATS Mem. at 11–12.) Specifically, Defendants argue that Plaintiff improperly made two motions for reconsideration, both of which the Court rejected (12-cv-7734, Doc. Nos. 178, 230), and that it took an appeal to the Federal Circuit solely for the purpose of delay. *Homeland Housewares, LLC v. Sorensen Research*, 581 F. App'x 877, 879 (Fed. Cir. 2014) (finding that a party's decision to file "multiple motions for reconsideration that . . . were without merit" supports the award of fees). But while it is true that Plaintiff's motion for reconsideration of the Court's order granting judgment on the pleadings was rejected as "preposterous" (Doc. No. 230), and although ATS generally asserts that it expended resources preparing to respond to the motion, ATS does not quantify the extent to which it was prejudiced and, in any event, never actually responded to either motion. (ATS Mem. at 12.) The Court also rejects Defendants' speculation that Plaintiff moved for reconsideration and appealed to the Federal Circuit "for purposes of delay." (ATS Mem. at 12.) While such conduct would be

wrongful, Defendants offer no substantiation for their claim that "[Plaintiff's] appeal was filed to delay the finality of this Court's judgment while other proceedings involving [Plaintiff's] patents-in-suit were pending, in hopes of getting a different result from another tribunal." (ATS Mem. at 12.) In fact, Defendants do not even identify another then-pending case involving the '046 or '010 patents which Plaintiff *could* have been trying to salvage. (*See* ATS Mem. at 11–12; *see also* 12-cv-7734, Doc. No. 249 ¶ 74.)

Considering the "totality of the circumstances," the Court concludes that fee shifting under 35 U.S.C. § 285 is not warranted in this case. *Octane Fitness*, 134 S. Ct. at 1756. While Plaintiff's case was weak – and became more so after the Supreme Court issued its opinion in *Alice* – the Court cannot conclude that it was so totally "meritless" as to warrant fee shifting. *Id.* at 1757. Likewise, while Plaintiff and its counsel at times behaved poorly over the course of this litigation, the Court cannot conclude that the misconduct in this suit, which was hotly contested by both sides, stands so far apart from the usual case to warrant the award of attorneys' fees. Accordingly, Defendants' motion for fees under the Patent Act is denied.

### III. ATTORNEYS' FEES UNDER 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWER

In addition to requesting fees under the Patent Act, Defendants also seek attorneys' fees against Plaintiff's counsel pursuant to 28 U.S.C. § 1927, and against Plaintiff and Plaintiff's counsel pursuant to the Court's inherent authority. To impose sanctions under 28 U.S.C. § 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)). The same requirements apply to sanctions imposed under the Court's inherent powers, *Oliveri v. Thompson*, 803 F.2d 1265,

1273 (2d Cir. 1986), and are more exacting than the 35 U.S.C. § 285 "exceptional cas[e]" threshold, *Advanced Video Techs. LLC v. HTC Corp.*, No. 1:11 Civ. 06604 (CM), 2015 WL 7621483, at *5 (S.D.N.Y. Aug. 28, 2015). Therefore, having declined to impose sanctions under Section 285, the Court likewise declines to sanction Plaintiff's counsel or Plaintiff itself pursuant to 28 U.S.C. § 1927 or the Court's inherent authority.

IV. CONCLUSION

For the reasons set forth above, Defendants' motions for attorneys' fees are denied. The Clerk of Court is respectfully directed to terminate the motions pending at docket number 175 in case number 12-cv-6781 and docket number 263 in case number 12-cv-7734.

SO ORDERED.

Dated: March 28, 2018
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE